Good morning, Your Honors. Janice Lagerlof, appearing for James Stringer, the petitioner and appellant in this matter. I plan to focus very briefly on bringing together all of the reasons why the evidence is not sufficient to support Mr. Stringer's conviction of murder on a natural and probable consequences theory, especially in light of the erroneous admission of evidence which could not be cross-examined statements by his co-defendants. and certain erroneous jury instructions which, unless the court has questions about, I won't specifically address other than to explain how they permitted the jury to make a finding on natural and probable consequences theory that was a broad extension of what that theory could reasonably be used for in this case. I believe you can find that the state's court's holding on the sufficiency of the evidence was subjectively unreasonable because it was based so substantially on a speculative assessment of what Mr. Stringer actually could reasonably foresee on these facts. There's no doubt that he was involved in the initial assault on the young boy Lamar, that although there was contested evidence, the jury could reasonably find that he did have a gun at that time. However, the rest of the basis of the string of logic that both the state court and the district court used to find that Mr. Stringer, based on participation in that assault, should reasonably have known that 20 minutes later, a different person would come upon the scene and be killed by one of his confederates. Does the record reflect how long it was between the confrontation with Lamar and Howard's shooting the victim? I believe it's sometime between 18 and 25 minutes, but it's definitely not immediate and it's definitely clear that Lamar's brother, Curtis, no, Howard Morris, I'm sorry, the names are very similar here. Howard Morris is the brother, Curtis Howard is the shooter and the co-defendant. Mr. Morris was not present at the time of the confrontation with Lamar. In fact, the evidence I think shows there was nobody else outside in the courtyard except for Lamar. Mr. Stringer was identified as, well, I think one important mistake that the courts both made in their string of logic was that Mr. Stringer broke Lamar's hand. And the jury made a finding that the great bodily injury enhancement was not true. The only basis of that great bodily injury enhancement was the broken hand. So that aspect of the string of logic is factually incorrect and would be unreasonable to apply that. Basically what the string of logic the court uses and the foreseeability aspect as to Mr. Stringer is so speculative that it can't serve as a basis under due process. There was plenty of evidence that Ms. Forstein made statements to other people in her neighborhood about a desire to bring people or muscle or one-eyed Jimmy or one-eyed Jack or one-eyed Willie to get revenge on Lamar's family. The record is also clear that Mr. Stringer, even though his first name is James, is not one-eyed Jimmy. Based on Chad's testimony, prosecution witness testimony, that he is not one-eyed Jimmy. He didn't see one-eyed Jimmy that day. So that's another way in which his connection to Ms. Forstein and whatever her plans were breaks down. So the foreseeability really depends on what Mr. Stringer could possibly have been proved to know about what went on in that apartment complex in the weeks before. But why did he travel with a gun with Lamar to the location in the first place? Well, there were two reasons that the record supports. First is that Mr. Howard was 77 years old at the time of this crime. He had had a stroke. There was evidence that he suffered from dementia. He testified that he didn't feel capable of driving himself from San Francisco to Sacramento and back, which was what his plan was for that day. It was not clear that it was Stringer's. Witnesses testified that he had a gun in his waistband. Lamar testified he pulled it on him. And the fact that he had a gun doesn't mean that he could anticipate that 20 minutes later while he was inside an apartment playing video games, his confederate would go outside again and be confronted by somebody who wasn't present and then shoot. I'm saying, isn't it a fair inference from the evidence that the purpose of the trip was to accomplish the killing? I don't think that that's true. I think the purpose of the trip, from Mr. Howard's point of view, was to make people leave his 13-year-old son alone. And he and his ex-wife were convicted of first-degree premeditated murder. Mr. Stringer was not convicted of premeditated murder. So the jury did recognize that there was some difference in their levels of culpability and their intents or premeditation in this regard. But even if the court believes that Mr. Stringer was brought along as the muscle to confront Lamar, I don't think you can make a reasonable inference that his conduct or the evidence upon which the court relied about speculative comments that Mr. — speculative comments about Mr. Howard's intent can support that he was aware that once Mr. Stringer was — once the assault on Lamar had been completed and Lamar had been threatened and told to leave Chad alone, that a completely different person would come upon the scene and begin the confrontation with Mr. Howard. I suppose the most speculative would be the statement that is somewhere in the court's comments that, well, Howard, of course, knew what the purpose of the trip was because he'd been talking to Ms. Forstein, you know. And he must have told some of that to Stringer while they were driving down. Precisely. Thank you for getting to that. Well, I mean, that — so I suppose what we have to look at is whether the confrontation with Lamar is a sufficient indication that Stringer knew the purpose of the whole enterprise. And by your view, he only knew that the confrontation with Lamar was part of the enterprise of scaring off people who were bothering the 13-year-old. Well, I'm not really sure that a fair reading of the record establishes that the purpose of the enterprise was that somebody was going to get killed. Ms. Forstein did make some comments about that, and it should be remembered that he — Mr. Stringer was not able to cross-examine her about any of those statements, and yet the court instructed the jury that they could use them for any purpose whatsoever, which I think was also an error in terms of this record. But it left him without the ability to clarify what was very murky. And the fact that she at one point said to other people in her threatening way that nobody took seriously, I'm going to bring my muscle here, doesn't support that Mr. Stringer was that muscle, because if he was there to back up this frail 78-year-old man, he was not doing a very good job, because he clearly thought things were over. He was inside playing video games with the 13-year-old while Mr. Howard was out waiting for the confrontation, having the confrontation, shooting the young man, and he also then went outside and immediately called the police when it was over. He didn't try to run. He didn't try to escape. I think that a fair reading of this record in the speculative nature of everything that's really needed to prove for us the ability as to Mr. Stringer, particularly when you look at possession of a weapon is not simply enough in Mitchell v. Prunty and other cases that I've cited in my brief, I think that it's an objectively unreasonable assessment of the facts to find that due process supports this conviction. Thank you. I don't have much time, but maybe I'll rebut if I have a chance. Thank you. May it please the Court, Deputy Attorney General David Rhodes representing Warden Harrison. Let me first begin by just pointing out a few disagreements I have with what counsel had just indicated. First of all, I think the intent of the shooter, Howard, was very clear, because when he was talking with police afterwards, he said exactly what his intent was. His words were after shooting the victim, I came what I did. I mean, I did what I came here for. And he then told the policeman he had no intent to hurt him. Next, with regard to the breaking of the hand and the finding of the jury, we're talking here about sufficiency of the evidence. And Lamar himself personally testified that it was Appellant Stringer that broke his hand. Now, the fact that the jury found, did not find the great bodily injury enhancement to be true could well have been simply a finding that they didn't find that the injury to the hand was sufficient to constitute the, to fulfill the enhancement. It says nothing about who they felt. What is the definition of great bodily injury? Is it breaking a hand? I think it's lasting and significant. I mean, to my mind, certainly a broken hand qualifies. I have no real reason for why they wouldn't have found it. On this record, I don't see why they did not. Was there any doubt whether there was some prior injury to the hand? There was no evidence of that. All we have is Lamar himself testifying that Appellant did it. He was the one that slammed his hand into the mailbox. There was no evidence it was the shooter, Howard. Could you just point to me, point out to me, rather, the evidence that indicates that the appellant here was aware that the intent was to kill, as opposed to maybe get the kids to leave the child alone. Your Honor, first I have to disagree with your premise. Stringer be aware of an intent to kill. He was not prosecuted under an aiding and abetting theory. He was prosecuted under the theory that the homicide was a reasonable and probable consequence of the assault. And that does not require sharing the perpetrator's intent in the same way that aiding and abetting does. It's a felony murder kind of theory. Well, that's another one. But it does not require sharing the same intent and purpose as the aiding and abetting instructions did. If it would, this would be more similar to 1H, which it's not. What we have here is very clear and unmistakable evidence of the assault. And it's clear that this was part of a preconceived plan. They arrived there, Forstein made several statements of warning to her neighbors that my muscle is here, get inside, things are going to come down. I believe one of the gentlemen even said something to the man at the gate to the apartment complex. But then immediately upon arriving, before there was any confrontations with the other family, any discussions with the other family or anything, both men went up to a 13-year-old boy, pulled out weapons, stuck them in his ribs, said they were going to arrest him and flashed a badge to scare him. Appellant slammed his hand into a mailbox and said, we're here also for your brother and your father. So clearly up to that point. There was testimony that the defendant said that, that the appellant? One of the two men. Okay. While the assault was going on. So clearly, even if it was the other gentleman that said it, the appellant was certainly charged with hearing that and knowing it. So we have a coordinated plan, at least to that point. So then all the California law requires after that is given that. Do you think somebody from his family is not going to respond on behalf of a 13-year-old boy? Of course they are. I mean, this family lives there. There's been ongoing tensions. And do you think that somebody is not going to respond to protect what just happened to a 13-year-old boy or at least find out? And as far as we know, or as far as the shooter knew, all Howard was doing was coming outside to investigate. He didn't in any way assault the victim. He just walked out. The shooter pulled his gun and he shot him. And then he walked up and executed him. So all we need is foreseeability given the initial assault. Was the testimony regarding the confrontation with Lamar that both men pulled guns? Yes. Beyond that, unless the court has questions, I'm ready to submit. Just one question. What's the government's position as to whether we should certify the uncertified issue? There's an argument about juror misconduct and whether we should consider it. I'm sorry. I wasn't prepared to respond to that. I wasn't aware that it was not certified. Just off the cuff, it doesn't strike me as being a federal question. But even if it were, it was clearly the judge investigated the misconduct adequately. He interviewed every juror involved, gave defense counsel, asked whatever questions they wanted. And there was an element of Pelham himself causing the reaction from the jurors. Thank you, counsel. I have to speak really quickly because I have a few differences with counsel's statement. First of all, I think that there was doctor's testimony that said that Lamar's hand injury could not have occurred the way he said that it was a classic boxer's punch made by going like this into a hard surface, which is not what Lamar said happened. And I think the idea that Mr. Stringer didn't actually do what Lamar said. It was a boxer's injury. Yes, yes, this kind of a thing. Additionally, this was an aiding and abetting case because Mr. Stringer was not the perpetrator. So natural and probable consequences is a means of explaining and extending aiding and abetting liability. And the real issue here is foreseeability to a reasonable person in Mr. Stringer's position rather than whether he actually had that intent, whether he knew Mr. Howard had the intent is the important question here and whether he could have reasonably known that based on these facts I submit that he could not have. All right. Thank you. Thank you.
judges: Canby, Wardlaw, Trager